Martino. No rush. Take your time. Good morning, Mr. McFarland. Yes. Ready when you are. Good morning, Your Honors. I'm Charles McFarland. I'm from Kentucky, and I'm representing Terry Di Martino. I got involved in the case after his trial, and the first thing I did was go through the trial, and I found numerous, not necessarily through the trial, but also through the FRERETA hearing and so forth, and I found numerous red flags that indicated that he may not be I don't think he was competent to represent himself. Your Honor, could you speak up a little bit? Yes. I'm doing exactly what I said other people shouldn't do. When you look at the FRERETA issue, it's something that, for better or worse, the trial judge was there, and it's a particularly difficult situation for us to not give credence to what the district court said. I mean, it's just a peculiar . . . it's not the only one, and we sometimes duck by saying we're giving deference to a trial court, but when you're talking about how a lawyer behaves, it's difficult to get that off a record, I would think, or more difficult than many other things. I'm not sure I understand the question because he was representing . . . My only point is I think that on FRERETA you have a particularly steep hill you're climbing because of the nature of the inquiry and the extent to which it is something to which the district court has given credence, and I want you to respond to that if you wish to. Okay. Well, as far as this FRERETA hearing is concerned, there were numerous things that happened during the FRERETA hearing that caused great concern for me, and one of the issues was Mr. DiMartino had already interviewed a psychologist before this, and he felt that there was some incompetent issues involved, but it wasn't brought up. It wasn't brought up because he was representing himself. When I got involved, I noticed at the FRERETA hearing there were several major, major things. One of the things was . . . So are you saying that because it was something that would indicate his own incompetence, even though he had the evidence, he wouldn't use it? Yeah. He was diagnosed as having diluted . . . Is that what you're saying? I didn't . . . Run that by me again. Sure. I didn't think you heard that. The question is whether your position is that this is something that your client kept from the district court because it was something that reflected badly on him, even though it was important with respect to the issue that was before the court. In a way, you're right, because he did not want to believe that there was anything wrong. When he went to the FRERETA hearing and claimed that he was like Abraham Lincoln, and he also claimed that he knew more about this case than anybody else, he knew the truth, nobody else did, and he made this statement. This court . . . He asked the court, does this court follow the Connecticut and federal rules of civil procedure? To me, that gave a clear indication, and having talked to him, I'm not 100% sure that he knew that he was in a criminal court. He didn't understand that he would lose his license, insurance license over this. I have represented people in the Sovereign Citizens before, and usually I can reason with them, but with him, I couldn't. He just didn't want to admit, and even his family today even tell me they don't understand why he acted the way he did. I do want to address the court case that the government cited just prior to coming here, the Truitt case. That case, I thank the government for giving it to us, because it doesn't apply to Mr. DiMartino, but it does serve to illustrate the very arguments I made in the briefs. The first thing is, is that Ms. Truitt was trying to claim that she didn't have men's rape because she belonged to a group. The Supreme Court has made it clear that you can't use belong to a group either for criminal or for innocence. This is exactly what the judge did in their arguments at the so-called Daubner hearing. They were saying because he belonged to a group, he had to be competent. The problem is, the psychologist was trying to say he was incompetent. That's why he joined the group. It wasn't because he joined a group that he was incompetent, which is what the Truitt case is trying to say. He joined a group because he was incompetent. In that research, I also found out that I couldn't find any cases that indicated that the Daubner hearing and the Rule 702 hearing could be used to keep the judge from looking at red flags. It's used to keep evidence from a jury or a trier of fact, and a Daubner hearing is not for that purpose. The Daubner hearing is to find out if there's red flags, and the court used Rule 702 and Daubner to ignore red flags, not to keep it from the jury or from a finder of fact. The last thing I wanted to make clear is, if 702 is used, why wasn't it used against the countering doctor? He used an article that had no scientific basis whatsoever. It was just an article conglomerating things. He used that as so-called scientific evidence to show that if Mr. D. Martino belonged to a sovereign group, he must be competent. I don't think you can do that. I think the Supreme Court would be, in fact, in Brandenburg versus Ohio, just belonging to a group does not make one innocent, nor does it make one guilty. And that's what the government was trying to do. They were trying to say, contrary to what the psychologists were saying, they were trying to say, he belonged to a group, he must be competent. But the psychologist was trying to say, he was incompetent, that's why he joined the group. And I see I only have 20 minutes left, so I'll reserve that to my closest. Okay. And you've reserved three minutes for rebuttal, Mr. McFarland. Ms. Hart-Mahan? May it please the Court, Alyssa Hart-Mahan for the government. I just want to make clear, the government is not arguing that Mr. D. Martino's membership in the sovereign citizen subculture definitively demonstrates that he was competent. The government argues that his membership in that group is relevant to a competency determination. And I submit that the red flags, most of the red flags listed in defendant's brief relate to his membership in that organization. His filings, his supposedly nonsensical filings, his claims for inflated refunds, his arguments about the IRS being a private corporation, all of those are taken directly from sovereign citizen materials. The record makes clear that he learned about those arguments and those tactics at various seminars that he attended. He paid another member of the subculture to prepare the 2007 returns that claimed the fraudulent refunds. So we're not arguing that just because he was a member of this group means that he was competent. We're saying that in considering his competence, you must also consider the nature of the movement and his involvement in it. I would also argue that the record does not support the assertion that he joined the sovereign citizen subculture because he was incompetent. Have we ever ruled that these sovereign citizen beliefs don't establish or really don't bear upon the competency of a defendant who otherwise seems to be high-functioning? I'm not aware of — I think that's the argument you're making. I'm not sure we've released it. I'm not sure that this Court has specifically addressed that question. Other courts have. Other courts have. The Ninth Circuit in United States v. Neal, which we cite in our brief, held that, you know, that was a case where the defendant was a sovereign citizen who made — I've lost the thread. That was the case. What was the case? What was the case holding? What was — what was Judge Jacob, your respondent's case? Oh. What was his question? No. I was — yeah. You mean my question? I was asking — Yeah. — whether we have ever held that these sovereign citizen beliefs can't be — really don't bear upon the competency of a defendant who otherwise — otherwise is high-functioning. I think there may be an unpublished opinion from this Court, which we cite in our brief. I think it's United States v. Aguirre. I would want to confirm that. But I think that was a case where the defendant was making sort of unorthodox arguments. I believe they may have been sovereign citizen arguments. And this Court held that those arguments by themselves don't establish a lack of competence. And that was essentially the Ninth Circuit's holding in Neal and the Seventh Circuit's holding in the James case, which we also cite in our brief, that just because a defendant    And I think that was a case where the defendant was making sort of unorthodox arguments. about jurisdiction or sort of your typical sovereign citizen tax protester arguments, those do not necessarily indicate a lack of competence, that you have to look at the defendant's conduct. Here, as in the Neal case, we have a seven-day trial transcript where the defendant represented himself and demonstrated a rational and factual understanding of the proceedings against him. He mounted a good-faith defense. He understood that the government needed to prove willfulness and a corrupt intent. And he argued to the jury that he had a good-faith belief that in the legality of his actions, he explained his legal research. It was ultimately unsuccessful. But you seem to be arguing earlier that because Mr. DiMartino engaged in various machinations to hide his income and so on and avoid paying the taxes, that that suggests that he did not really believe that he didn't owe them. But a person who believed he didn't owe the taxes might also know that the government is going to make efforts to collect it. So why does his efforts to conceal his income suggest that he did not have a sincere belief that he didn't owe it? Taxes. So two responses. First of all, the issue as to whether he had a sincere belief that he didn't owe taxes, that was the question before the jury. And he made that argument to the jury, and they did not credit his testimony. They rejected that argument. The fact that he was, you know, disregarding these notifications from the IRS and hiding his money from the IRS suggests that he didn't misunderstand what the law was, but rather he disagreed with the law. And that was something that the district court found significant in analyzing Dr. Meisler's opinion because Dr. Meisler failed to consider the alternative hypothesis that Mr. DiMartino knew what the law was but disagreed with it and was taking these actions in order to avoid paying taxes. And that that hypothesis was at least as plausible as the theory that he was suffering from a delusional disorder. And the question before the court here is whether the district court properly exercised its discretion in its evaluation of defendant's motion for a competency hearing. And the record demonstrates that the district court very carefully considered Dr. Meisler's opinion. The court used the framework from Rule 702 and Daubert to evaluate the reliability of that expert opinion, and that was a proper exercise of the court's discretion. And both the transcript from the Daubert hearing and the district court's very Dr. Meisler's conclusions demonstrate that the court took its duties seriously and, you know, was considering everything before it. I would note defense counsel now argues that it was improper for the court to hold a Daubert hearing in order to evaluate Dr. Meisler's opinion. But I would note that he raised that argument for the first time in his reply brief, and below he did not object to the procedures employed by the district court. In fact, in the briefing that occurred after the Daubert hearing, defendant argued that the court should conduct the Rule 702 Daubert hearing before analysis, excuse me, before turning to the reasonable cause question that's at the heart of the statute here, whether there was reasonable cause to question defendant's competence. The district court, as I mentioned earlier, this was a seven-day trial where the defendant represented himself. The district court had ample opportunity to observe the defendant throughout the trial and during the Ferretti hearing, and the district court relied on its observations in reaching the conclusion that no reasonable cause existed. And the court's determination that Dr. Meisler's opinion was not reliable and did not create reasonable cause was entirely proper. If the court has no further questions, we ask the court to affirm. Thank you. Mr. McFarland? Yes, Your Honor. I would like to make it clear that the article that Mr. Zanotto, Dr. Zanotto, never pronounced his name right, that article gave the false impression that just because a person had a sovereign citizen belief and was facing a criminal trial, he was not delusional. And the big question in here is what was the purpose of asking for a review? Was it to present it to the jury, which is what happened in the Truer case, or was it to have an incompetency evaluation? And I submit it was for an incompetency evaluation, not to present in front of the jury. And as a result of that, the red flags, and I listed like six different categories of red flags that happened throughout the Ferretti hearing and my interviews and trial and so forth. And probably the biggest ones was this gentleman, this is not something I've ever found in the sovereign citizen group, where he took a $400 car payment and converted it to a $22,000 IRS payment. I can't find that any place that that's a normal procedure for anybody. And everybody I talked to said that's insane. And the psychologist was trying to point out he was incompetent long before all this stuff started. And he joined the group because of his incompetency. Perhaps that was just an act of contempt. Pardon? Perhaps that was just an act of contempt for the IRS. Well, yeah, because of his incompetence. You want your money? Here's your money. Yeah. But he was incompetent in certain areas of his life. Delusional is what the doctor said. And to kick out Dr. Meisler's report and ignore all the red flags indicates the judge didn't really want to know whether he was competent or not. All he wanted to do was to just okay his trial. So if we agree with you, what happens? Pardon? Oh, it goes back to have an evaluation. We're not asking for a new trial because I believe they'll find that he was incompetent because of the delusional. I had a case like this 30 years ago, United States v. Ong, which is exactly what happened. The court realized that he probably may have been incompetent. It was reversed back for an examination. And in the examination, he wasn't able to show he was incompetent. This one, I'm almost positive they will because the actions that he did before he got involved in this and his history indicated he was having delusional concepts long before he started fighting with the IRS. So I see I'm almost out of time unless you have any other questions. Okay. Thank you, Your Honor. Thank you very much. We'll reserve decision in this case.